### HUMBLE OIL & REFINING CO. v. RAILROAD COMMISSION et al.
### No. 8054.

Court of Civil Appeals of Texas. Austin.
Dec. 30, 1933.

626

Ben H. Powell and J. A. Rauhut, both of Austin, and R. E. Seagler, of Houston, for appellant.

James V. Allred, Atty. Gen., and Maurice Cheek, Asst. Atty. Gen., for appellees.

McCLENDON, Chief Justice.

This suit was brought in the nature of an appeal, to set aside an order of the Railroad Commission granting a permit, as an exception to the spacing restrictions of rule 37, to drill an oil well on a 2½-acre tract in the Conroe oil field in Montgomery county, and for ancillary injunctive relief. The plaintiff (appellant here) owns an oil lease on a tract adjoining the 2½ acres. Defendants are the Railroad Commission, its members, and the owners and others having an interest in the 2½-acre lease. The appeal is from a final judgment of dismissal, after a general demurrer to the petition had been sustained, and plaintiff had declined to amend.

The appeal presents the sole question of the correctness of the judgment sustaining the general demurrer; and, since the case thus presented is ruled by. the decision in Sun Oil Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d) 609, it will only be necessary to give in general outline the essential allegations of the petition. These are:

The 2½ acres was a part of a 33.5-acre tract, owned in fee by cotenants for over twenty years up to December 21, 1931 (about eight days after the Conroe field was discovered), when the owners severed the mineral title by executing an oil and gas lease. By mesne conveyances the north 10-acre leasehold, including 2½ acres, passed to Dyess who, in January, 1932, conveyed the south 7½ acres thereof, reserving to himself the 2½ acres in question. Plaintiff acquired the entire 33.5-acre leasehold other than the 2½ acres. Rule 37 as originally promulgated in 1919 was applicable to the Conroe field. It provided for spacing of not less than 300 feet between wells and not less than 150 feet from property lines, authorizing granting of exceptions, however, to protect vested rights and prevent waste. Amendments to the rule applicable to the Conroe field promulgated June 14, 1932, and February 27, 1933, increased these spacing distances, respectively (1) to 660 and 330 feet, and (2) to 933 and 466 feet. The configuration of the 2½-acre tract was such that no well could be drilled there-

on that would not be less than 150 feet from one or more of its boundary lines, and therefore the commission had no power to grant a drilling permit, unless the case was brought within one of the above-named exceptions to the rule. The owners of the 2½ acres applied for such permit, which after notice and hearing, and over plaintiff's protest, was granted "to protect vested rights," and became finally effective August 10, 1933. The petition sets out with much particularity and detail a description of the geological formation of the Conroe field, alleging facts from which it deduces the allegation that a well cannot be drilled on the 2½-acre tract without producing great physical waste, great and irreparable injury to plaintiff, as well as great danger and injury to the entire field. It is unnecessary to set forth these details; their sufficiency to support the alleged conclusions we think cannot seriously be questioned. The petition also alleges that a well on the 2½ acres is not necessary to protect vested rights; that one well in the center of the 10-acre tract is all that is essential to extract all the oil to which all parties at interest in the entire tract taken as a whole are entitled; that it offered at and before the commission hearing, and still offers, to pool said interests in proportion to acreage and have such well drilled, such drilling to be done either by plaintiff or the owners of the 2½-acre tract, the expense of drilling and operation to be justly and equitably apportioned.

In order to bring a case within the exception to the rule "to protect vested rights," it is essential that such vested rights may be adequately protected in no other way. It is manifest, therefore, that, where a situation which would circumvent the rule is created by voluntary act, acquiescence, or connivance of the parties after the rule has attached to the property, such situation cannot be asserted as a valid ground for exception to the rule. The parties, in that event, are relegated to their rights as they existed prior to the creation of such situation. This is the effect of the holding in Sun Oil Co. v. Railroad Commission, above. It follows that the commission was without power to grant the permit, and that the general demurrer was improperly sustained.

The trial court's judgment is reversed, and the cause remanded to that court for trial upon the merits.

Reversed and remanded.